UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
JOEL HERMAN,                                )
                                            )
                Plaintiff,       ) **Case No. 15-cv-03059  (PKC)(SJB)**
   -against-                               )
                                            )
THE CITY OF NEW YORK et al,                 )
                                            )
                Defendants.      )
------------------------------------------------------------X

### DECLARATION OF SIMON SCHWARZ
### IN SUPPORT OF MOTION FOR RULE 37 SANCTIONS

I, **SIMON SCHWARZ**, hereby declare, pursuant to 28 U.S.C. 1746, under penalties of perjury, as follows:

1. I am the attorney to Plaintiff, JOEL HERMAN, in the above-titled action. As such, I am personally familiar with the facts set forth herein, unless otherwise stated therein.

2. I note that in its Order dated Sept. 13, 2019, the Court stated:

> Plaintiff shall either file his Rule 37 motion or advise the Court and opposing counsel via letter filed on ECF that he is not filing that motion, also by December 26, 2019. Plaintiff is advised that if he fails to file the Rule 37 motion by that deadline he will have waived his ability to file a motion for sanctions against Defendants' Counsel for any behavior that occurred prior to that date.

**A. Relevant Procedural History**

3. Plaintiff Joel Herman filed this action on May 26, 2015 (**DE 1**) pursuant to 42 U.S.C. § 1983 against defendants New York City (the "City"), 90th Police Precinct Detective Kenneth Wieber (WIEBER") and others. for the deprivation of his 1st and 14th Amendment rights, including false arrest, malicious prosecution, unreasonable search and seizure, diminution of his established parenting and child visitation rights.  The City was served on Aug. 24, 2015 (**DE 10**).

1

4. The initial complaint also contained a joint activity/§ 1983 conspiracy claim against the City and the Private Party Defendants for depriving him of these rights, plus a number of state law claims. On Oct. 1, 2015, Plaintiff filed an Amended Complaint as of right, adding three parties (**DE 12**).

5. After failing to timely answer or appear at a scheduled conference on a motion to dismiss filed by the Private Party Defendants, the City defendants then moved twice (**DE 13, 23**) and were granted two extensions of time by minute orders dated Oct. 13, 2015 and November 25, 2015 to answer or move to dismiss the Amended Complaint to December 30, 2015. On December 30, 2015, the City defendants filed a barebones answer loaded with denials and generalized defenses suitable for a police misconduct case (**DE 24**).

6. The Private Party Defendants filed a Rule 12(b)(6) motion to dismiss on Oct. 16, 2015 (**DE 18) and** District Court Judge Gleeson agreed, dismissing all claims against them on March 9, 2016 (**DE 2**). As a result, the Initial Conference was delayed and discovery did not begin in earnest under Rule 26 until April 16, 2016, despite the fact that plaintiff served its First Document Request on January 8, 2016 nd a deposition notice to WIENBER on Dec. 30, 2015. Plaintiff ultimately filed a Second Amended Complaint ("SAC"), with leave of the Court, on March 31, 2016 (**DE 30**).

7. At the Mar.18, 2016 Rule 26 conference (DE 28), it was acknowledged by all parties that Plaintiff's January 2016 document request was premature in the sense that it was issued prior to the Rule 26 conference, but regardless of that date, was due on April 16, 2016 under Rule 26. Nevertheless, the City produced nothing.

8. Instead, the City then sought a pre-motion conference to obtain permission to file a motion to dismiss on qualified immunity grounds and a stay of discovery pending that motion, all of

which was denied by Judge Chen, on Sept. 26, 2016. (**DE 52**). Unfortunately, due to a serious medical condition of the undersigned, the case went inactive for about a year and reactivated with the appointment of Magistrate Judge Bulsara in the autumn of 2017.

9.  Since then, the City has spent nearly two more years dilly-dallying engaging in bad faith by advancing false narratives and deliberately obstructing of discovery-almost all of it going back to Plaintiff's First Document Request served on Jan, 13, 2016. In fact, this Document request covered almost every NYPD document produced by the City in multiple productions purportedly as supplemental discovery under Rule 26(e) until the end of May 2019 and the deposition notice to conduct depositions of WIEBER. to compel the production of documents by the City Defendants and to compel the deposition of WIEBER *See* next section.

10.  All this was part of a clear effort by the City Law Dept. to stop the undersigned from being able to prove highly unethical conduct by WIEBER in having the Plaintiff arrested three times and prosecuted twice on multiple criminal charges that were entirely baseless, in an attempt to help JOEL's ex-wife, Rochel Herman, with the help of her friends, get out from serious charges of insufficient child care by ACS against her, based on a complaint made by Plaintiff, and to help her win a custody/visitation battle in a divorce action in New York Supreme Court.

**B.  Defendants' Document Production Pursuant to Rues 26(a) and 26(e)**
**(i)    The Close of Fact Discovery**

Although document production by the City ended on a final discovery cut-off date of May 17, 2019, [1] *fact discovery* was not fully completed until June 11, 2019 when the City deposed

---

[1] See order dated 4-8-19 ("The close of discovery is hereby extended, for the last time, to 5/17/2019" (**DE__**); *see also* **Exhibit __** which summarizes the numerous extensions of discovery cut-off dated granted by Judge Bulsara from November 2017- to May 17, 2019, almost all due to the City's failure to provide timely document production or to produce any documents at all under Rule 26(e) or pursuant to Plaintiffs First Document Request dated January 8, 2016 (**DE__**) **(Exhibit __),** followed by four more in 2018 and 2019.*See* **Exhibit __**. These were all duplicate requests for specific already covered by item 1 of Plaintiff

3

Plaintiff's criminal attorney, Richard Finkel. *See* order dated 5/13/2019 ("Defendants' motion to take the deposition of non-party Richard Finkel after the close of *fact discovery*] is granted. Mr. Finkel's deposition may be taken no later than June 14, 2019") **(DE__)**; front page of Finkel deposition transcript indicates Mr. Finkel was deposed on June 11, 2019.

### The Post-Discovery Facts and the F.A.C.

As a consequence of more than three years of extensive fact discovery and much litigation, Plaintiff has developed a mass of circumstantial and direct evidence as to WIEBER's and the City's 1983 liability, as well as the liability of individual defendants, NYPD Officer D'ALTO and NYPD Sergeant s STEWART and MAMYS for their Failure to Intervene, all of which is summarized in the post-discovery Fourth Amended Complaint ("F.A.C.") **(DE__)**, consisting of four video surveillance tapes, an I-Phone audiovisual recording, multiple documents contained in NYPD files, ACS files, Kings County District Attorney files and Supreme Court files.

**Willful Spoliation of Documentary Evidence by WIEBER and the City-The Non-Production of the 90th Precinct Detective Squad's Cased Files Kept in Hard Copy Form and Critical Notes of WIEBER Contained Therein As Relates to Plaintiff's Three Arrests on May 26, 27 and 30, 2014 at Issue in this Action**

In item 2 of Plaintiff's First Document Request Dated January 8, 2016, Plaintiff requested:

> True, complete and un-redacted copies of all documents and police reports, including, without limitation, (i) handwritten notes or logs, prepared or maintained by Kenneth Wieber or any other police officer or police detective of the 90th police precinct, (ii) handwritten or oral communications or statements of witnesses and/or any notes concerning such communications or statements prepared or maintained by Kenneth Wieber or any other police officer or police detective of the 90th police precinct, and (iii) any notes prepared or maintained by Kenneth Wieber or any other police officer or police detective concerning or related to two criminal cases commenced and ultimately dismissed in the New York City Criminal Court, County of Kings, captioned *People of the State of New York v. Joel Herman*, Docket Nos. 2014KN038594 and 2014KN040353, respectively, and the three arrests of Plaintiff, Joel Herman, on or about May 26, 2014, May 27, 2014 and May 30, 2014, Arrest ## K14646926 & K14647007, and

---

First Document Request. All exhibits referenced herein will be filed separately under seal annexed to a Motion to Seal for the reasons stated therein.

K14648280, respectively, which triggered the above criminal charges.

The City produced nothing in response. In their woefully untimely Response dated Feb. 7, 2018 **(Exhibit __),** loaded with ridiculous objections long after its ability to object expired, concludes:

> ….plaintiff is referred to defendants' Initial Disclosures dated March 3, 2016, and Supplemental Disclosures dated February 7, 2018, June 6, 2018, and June 20, 2018, and to the documents previously produced bearing Bates Stamp Nos. DEF 1 - 141, 170 - 182 & 184 - 193.

However, all of those referenced and produced documents are only computerized records and not the PDU case files or WIEBER's notes.

During his initial deposition held on Feb. 8, 2018 and continued on May 8, 2019, WIEBER admitted that the 90 Precinct Detective Squad maintains case files in paper format, referenced by PDU #__ , for about four years by the assigned detective at the Detective Squad. After four years after the closing of a case, they are shipped to storage. *See* Motion, **Ex. _**. In fact, several pages of handwritten/partially typed DIRs, arrest reports and other police reports signed by WIEBER, and a handwritten abuse report sent by him to ACS, were filed by Rochel Herman's attorney in a pending State Supreme Court divorce action with the State Supreme Court to cut-off plaintiff's visitation rights on May 29, 2014 (**Exhibit _,WIEBER Deposition Ex. 9**) unquestionably given to him by WIEBER. As WIEBER admitted at his follow-up deposition, no other cop had immediate access to those fresh files arising from a May 26, 2014 still in his desk draw. However, these documents do not appear on the computerized centralized database of the NYPD.

As to the requested "Notes," on several occasions during the deposition, WIEBER sought his "notes" during his first deposition (Exhibit ) several times in responding to my questions, and their significance became apparent. Attached as **Exhibit __** is WIEBER's testimony given in a Family Court proceeding on Jan. 30, 2013 (**DE 84-3**, **Exhibit _**) where he explained with more

5

detail and clarity the significance of the "notes" to his work and his complete reliance thereon. WIEBER explained that these notes are the source for his computerized reports often filed weeks late.

The significance of the "notes" is readily apparent with respect to the third arrest of May 30, 2014. The computerized records produced by the City contain almost nothing but a Domestic Incident Report, a Complaint report and an Arrest Report. There is not one follow-up report including the incident involving the ACS CPS (case protective specialist) who came to see the children at JOEL HERMAN's residence only to watch him being handcuffed and arrested by WIEBER while protesting loudly. JOEL's protesting words and WIEBER's outrageous responses were all reported in ACS's Progress Notes. *See* **Exhibit __**.

Nor do contain any thing about the visit of JOEL's criminal attorney FINKEL to the 90th Precinct Detective Squad about an hour after the arrest and his discussions with WIEBER and Supervising Sergeant MAMYS. *See* **Exhibit __; Finkel Declaration.**

In the same vein, the computerized records do not say anything about WIEBER's visits to JOEL HERMAN's parent's home after the arrests (**Exhibit __**), or his conversations with Fraidy Herman, JOEL's sister, who accompanied JOEL's young son Aaron to the 90th Precinct in a police vehicle, following JOEL's arrest, and while outside the 90th precinct station house (**Exhibit __).**

Even with respect to Plaintiff's first and second arrests, the computerized records contain not a word about the multiple phone conversations between Mandel, Greenberg, Rochel Herman and Wieber, between April 22, 2014 and May 30, 2014. Nor do they mention the obvious passing of fresh police records relating to a criminal case was just commenced in City Criminal Court, in flagrant violation of written police protocol, from WIEBER's PDU case files which appear in an Order to Show Cause filed in State Supreme Court in a divorce action to substantially diminish or

6

cut off entirely JOEL's visitation rights to see his children, portraying him as a reckless parent endangering the welfare of children (**Exhibit _,WIEBER Deposition Ex. 9**).

In his family court testimony (**Exhibit _**), WIEBER made it cleat that the Notes contain detail not included in the computerized files which he sometimes can not complete until long after the underlying activity took place.

Shockingly, after months of requesting these missing case files and missing handwritten notes of WIEBER, the City produced an Affidavit of the new Commanding Officer of the Detective Squad (**Exhibit __**) indicating that he had personally searched for these files at the 90th precinct and at the storage facility but could not find these files. However, WIEBER testified at his follow-up deposition of May 8, 2019 that he turned them over to the City Law Department in early 2016, after being asked to turn over all "paperwork" relating to the three arrests at issue in this action in response to Plaintiff's First Document Request.

**Willful Spoliation of Documentary Evidence by WIEBER and the**
**City-Non-Production  of the 90th Precinct Detective Squad's  Sign-**
**In Logbook Covering the Period  from April 23 to May 30, 2014**

In item 1 of Plaintiff's First Document Request Dated January 8, 2016, Plaintiff requested in relevant part:

> True, complete and un-redacted copies of any and all documents and police reports obtained by the Defendant City of New York from …..the NYPD, including without limitation the NYPD's 90th Police Precinct and its 90 Detective Squad, ……..concerning or related to two criminal cases commenced and ultimately dismissed in the New York City Criminal Court, County of Kings, captioned *People of the State of New York v. Joel Herman*, Docket Nos. 2014KN038594 and 2014KN040353, respectively, and the three arrests of Plaintiff, Joel Herman, on or about May 26, 2014, May 27, 2014 and May 30, 2014, Arrest ## K14646926 & K14647007, and K14648280, respectively, which triggered the above criminal charges.

The City produced nothing in response that relates to of the 90th Precinct Detective Squad's  Sign-In Logbook covering the period  from April 23 to May 30, 2014. Instead, in their

7

woefully untimely Response dated Feb. 7, 2018 **(Exhibit __), **loaded with ridiculous objections long after its ability to object expired, the City references non-responsive documents already produced by the City.

In his deposition testimony of October , 2018, MAMYS testified that he had been a Supervising Sergeant at the 90th Precinct Detective Squad from September 2010 to October 2014, when he was moved to the 88 Precinct. *See* **Exhibit __**. MAMYS clearly described the contents of what he called a "sign-in log-" in-out signatures and movements to the right. Tjhat is very different than the sheets produced by Attorney beck for one date-only-May 30, 2014. *See* **Exhibit __**.

Plaintiff's Fourth Request for Production of Documents dated April_, 2019 were served upon the City defendants pursuant to agreement of the parties by email on April 12, 2019, at 7:52 AM. *See* **Exhibit __**.That document request had a 30-day due date well before the fact discovery cutoff date of May 17, 2019. and sought "true, complete and un-redacted copies of the sign-in log of the NYPD 90th Police Precinct Detective Squad for the period from April 23-May 30, 2014, as identified by Sergeant MAMYS at his deposition of October 4, 2018, page 75, copy attached." Plaintiff's fourth document request for the sign-in logbook for the 90th Detective Squad for the period from "April 23-May 30, 2014" was only served on the City defendants as a matter of precaution because they were clearly due in response to item 1 of Plaintiff's First document request issued in January 2016.

Moreover, by letter dated April 12, 2019 from the undersigned to City Attorney Beck **(Exhibit __),** I further advised the City that "in serving this new request upon you, Plaintiff in no way waives his right to move to compel the production of the documents previously requested at any time hereinafter." I also advised the City that "[t]he …..significance of such documents was

not known until (i) the City defendants finally produced Detective Wieber's cellular phone records and other police records after three years of obstructive discovery conduct, which led to (ii) subpoenaed cellular phone records of Mandel and Greenberg phone calls were produced by cellular phone companies pursuant to Rule 45 subpoenas."

Nevertheless, the City continued to produce nothing. Instead, Attorney Beck responding by producing a different document only for one day-May 30, 2019, which is completely non-responsive to Plaintiff's request for a sign-in log. (**Exhibit \_\_**).

Moreover, Plaintiff timely served the City with a Second Deposition Notice dated April 19, 2019 (**Exhibit \_\_**) for the court-ordered (**DE \_\_**) completion of WIEBER's deposition. In that Notice, Plaintiff, pursuant to Fed. R. Civ. P.30(b)(2), 34, also requested that WIEBER produce at his deposition a copy of the 90th Precinct Detective Squad's Sign-In Logbook covering the period from April 23 to May 30, 2014. WIEBER's deposition was completed on was ultimately deposed a se. Neither WIEBER nor the City filed any objections to this demand or a motion for a protective order. Nevertheless, these documents were not produced at the deposition and the City refused to give any explanation as to why it did not produce the documents duly demanded.

Finally, Plaintiff experienced multiple but unsuccessful attempts to obtain production of 90th Precinct Detective Squad's Sign-In Logbook for the relevant period requested. The City's unabashed stonewalling and obstruction of discovery withholding and preventing Plaintiff from obtaining these important documents during the discovery period which are undoubtedly relevant to whether or not, and when, Rochel Herman, Plaintiff's ex-wife and Aron Greenberg and Aron Mandel, her friends and supporters, visited WIEBER during the relevant period from April 23, 2019 to May 30, 2019.

Plaintiff has made numerous attempts to obtain the 90th Precinct Detective Squad sign in log so aptly described by Detective Squad Supervising Sergeant MAMYS-one of the Detective Squad's three supervisors-at his deposition of October 5, 2018 (**DE __;Exhibit __**). Each time, City Attorney Beck has procrastinated and then given us other records not asked for instead. (**Exhibit** ). Each time Attorney beck claimed that these are the records demanded despite the fact that this claim flies in light of Sergeant MAMYS' clear and vivid description of the sign in logs. testimony.

I note that when we started asking for the sign in logs, we were at first interested in who was the supervisor at the squad the late evening hours of May 30, 2014. However, that issue was resolved by Plaintiff's criminal attorney, Richard Finkel who was at the second-floor detective squad that evening and got a card from the supervisor he met. (**Exhibit __**).[2]

Since then, Plaintiff has expanded his sights beyond May 30 and sought those logs for the entire critical period at issue-April 23, 2014-May 30,2014. Plaintiff would like to know whether Messrs Greenberg, Mandel and other friends of Rochel Herman visited Wieber there or whether Wieber, who, according to his cellular phone records, had quite a few one-minute calls back and forth with these people (perhaps meetings were arranged elsewhere), left the squad for clandestine rendezvous with these people immediately after the calls.

**Non-Production of Documents Duly Requested by Plaintiffs in Plaintiff's Fifth Document Request Dated**

In a combined set of Plaintiff's Interrogatories and Fifth Document Request dated May 13, 2019, in response to WIEBER's continued deposition testimony of May 8, 2019, several days

---

[2] At his deposition, MAMYS could not recall if he was the supervisor that might but stated that the sig- in log would definitely resolve that issue.

10

earlier plaintiff requested the documents set forth therein (**Exhibit __**), but the City simply ignored that valid discovery device and produced nothing in light of the May 17, fact discovery cut-off date.

WHEREFORE Plaintiff respectfully requests that his Motion for Rule 37 Discovery Sanctions be granted in its entirety, as set forth in the Notice of Motion, and .that the Court grant such other and further relief in its discretion as it deems fair and equitable in the circumstances of this unnecessarily extensive, time consuming and expensive discovery litigation deliberately protracted by the Defendants to make Plaintiff give up and walk away without getting the relief he is entitled to as a victim of police misconduct under 42 U.S.C. 1983.

Declarant declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, NY
December 26, 2019

_____
Simon Schwarz, Esq.