# The Schwarz Firm PLLC

Attorney at Law
954 Lexington Ave., No. 261
New York, New York 10021-5013

Simon Schwarz, Esq.
Email: sschwarz@justice.com            Tel.: 347-852-3514

February 10, 2020

**Via ECF**

Hon. Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East, 304 North
Brooklyn, New York 11201

Re**:** *Herman v. City of N.Y.*, **15 CV 3059 (PKC)(SJB)**

Dear Judge Bulsara:

    I am counsel to Plaintiff, Joel Herman, in the above-referenced matter. I respectfully file this letter motion on Plaintiff's behalf which seeks to (1) add newly discovered evidence to Plaintiff's Motion for Rule 27 Sanctions against the Defendants and (2) to have the Court hold a full evidentiary hearing prior to ruling on Plaintiff's Motion based on this newly discovered evidence, which is highly .relevant to two key issues raised by Plaintiff in his Motion. These issues are: (1) whether the conduct of WIEBER, the City of New York and/or the City Law Department as to the spoliation and disappearance of the hard copy Detective Files maintained by the 90th Precinct Detective Squad in the ordinary course of business regarding the three arrests of Joel Herman on May 26, May 27 and May 30, 2014 was sufficiently serious to warrant adverse jury instructions to be determined by the trial court at trial, and (2) the extent of their liability, jointly or severally, for the unnecessary legal fees incurred by Plaintiff as a result of unnecessary discovery practice caused by the Defendants' deliberate obstruction of discovery.

    **I.**     **The Newly Discovered Evidence**

    On Monday, Feb. 3, 2019, Plaintiff was first made aware of a 27-page fax on NYPD 90th Pct. Detective Squad stationary from WIEBER to Investigator Deborah Butler,[1] containing two almost identical memoranda requests dated Nov. 18, 2015 from Lieutenant Patrick Sullivan, NYPD Legal Bureau, Civil Litigation Unit to the Commanding Officer of the 90th Precinct Detective Squad "for documents/records pursuant to Patrol Guide Section 211-17 RE: *Herman, Joel vs City of New York, et al*." These requests specifically sought requesting certified copies to be submitted by Wed 12/16/2015, pursuant to Patrol Guide Procedure PG 211-17, of "Daily Activity Log/DAR of DET. KENNETH WIEBER,

---

[1] Each of the memoranda requests identifies Consultant Deborah Butler as "[t]he Civil Litigation Liaison assigned to this case."

#905290, FOR 5/26/14 & 5/30/14" and "COPIES OF *DETECTIVE CASE FILE REGARDING THE ARREST OF JOEL HERMAN, 5/26/14, 90 PCT, 2 FRANKLIN AVENUE. (A/O, DET. KENNETH WIEBER, TAX #905290*)." *See* pp. 2, 3 of the 27-page fax to be filed under seal as **Exhibit A**. The remaining 24 pages contained digital files only from the centralized Omniform System police arrest reports, police complaint reports, criminal accusatory instrument and DD5 follow up reports relating only to the May 26 arrests, but not the May 30th arrest. None of the hard copy Detective Squad Case Files maintained in the ordinary course of business were produced by the Defendants.

### 2. WIEBER's May 8, 2019 Deposition Testimony about Hard Copy Detective Files

At his continued deposition held on May 8, 2019 (*see* excerpts, **DE 210**), WIEBER explained the contents and nature of the hard copy Detective Files also referred to as arrest folders. WIEBER explained that the day a police complaint is filed a file is opened and given the same case number as the complaint No. All of the computerized central forms are printed out and placed in that file together with all his handwritten notes[2], related memo book entries and any handwritten forms. WIEBER further testified that they are kept in the Detective Squad for four years, and then transferred to one storage facility where all 90th Precinct files are kept. That would mean that all the case files at issue would have been kept at the Detective Squad until May 2018. Certainly, in December 2015 and early 2016, all the case files at issue would have been kept at the Detective Squad.

## II.     The Need for an Evidentiary Hearing

### A.   The Dec. 15, 2015 Document Itself Mandates Such A Hearing

Strangely, although WIEBER's daily activity log (or memo book) was requested for May 30 as well, copies of the detective case file regarding the May 30, 2014 arrest was not requested. It is readily apparent that WIEBER had already convinced Investigator Butler prior to making the formal request that no detective files existed for that arrest. Moreover, although the requested "detective case file" appears to clearly refer to the hard-copy case file maintained by the 90th Precinct Detective Squad, only computerized central records were produced by WIEBER with no explanation as to what happened with the hard-copy case files. Nor were any requested daily activity log or memo book entries for May 26 and May 30, 2014 produced by WIEBER.

Additionally, both requests required certified copies to be submitted pursuant to Patrol Guide Procedure PG211-17, WIEBER's submission was not certified. Finally, each of the memoranda requests state that:

> If the documents/records are unavailable, destroyed or cannot be located a UF49 must be submitted detailing the actions that were taken to secure the documents/records. Be advised that under certain circumstances, if

---

[2] In his Jan. 13, 2013 trial testimony in a Herman-related Family Court case (**D198, Ex. H**), WIEBER testified that his notes are generally more detailed than the computerized reports, sometimes written days or weeks later from his notes which he reads first

2

>    documents/records are not produced, a supervisor may be called upon to testify in court regarding the search conducted.

No such documents were submitted by WIEBER with respect to hard copy detective files at that time.

It is unknown at this time if there was any written or verbal follow-up between Investigator Butler and WIEBER as to the subject of his request and what appears to be WIEBER's inadequate response to that request. Only Butler's sworn testimony at an evidentiary hearing, together with her subpoenaed files, could definitively answer these glaring questions that are highly relevant to resolving this prong of the spoliation issue raised by Plaintiff.

Additionally, the requests were cc:'d to "Civ Lit Unit Staff- Ruth Williams." On October 16, 2014, I received a letter from Ms. Ruth Williams, who identified herself as a "Paralegal, Special Federal Litigation Division, City of New York Law Department," with a copy to Beth Hoffman, Esq. seeking executed releases from Joel Herman. I delivered the signed releases to her by hand and by email on Nov. 10, 2015. Thus, Ms. Hoffman, the assigned attorney of record at the time for the City Law Dept. was in total control of the document production she needed from the NYPD Civ Lit Unit. Obviously, Ms. Williams' sworn testimony at an evidentiary hearing, together with her subpoenaed files at the NYPD Civil Lit Unit and at the City Law Dept. dealing strictly with the request for, and receipt of, NYPD documents not subject to the attorney-client privilege, could definitively answer these glaring questions that are highly relevant to resolving this prong of the spoliation issue raised by Plaintiff.

### B. The May 6, 2016, First Supplemental Production by the City Under Rule 26(e)

In addition, **o**n May 6, 2016, Beth Hoffman delivered the City's 1st Supplemental Production under Rule 26(e) which included everything in the Nov. 10, 2015 package except several pages dealing with financial requests and subpoenas to Paypal and Green Dot Bank for accounts of Breindy Rosenberg-a supposed victim of Joel Herman who managed her accounts with her consent. Ms. Hoffman also produced five pages of handwritten documents signed by WIEBER that WIEBER had given to Rochel Herman's divorce lawyer for use in court papers filed on May 30, 2014 in State Supreme Court. They were obtained by Plaintiff and produced as part of its mandatory disclosure on March 3, 2016. Thus. Ms. Hoffman was clearly made aware that WIEBER had substantial additional information in his hard-copy Detective Files which were not produced.

### C. 7-18-19 Conference Order & Spezio Affidavit

At the July 19, 2018 oral argument hearing (*see* transcript, **DE 90**), following Plaintiff's second motion to compel (**DE 83**) Your Honor ordered that all "paper files related to the March 30th, 2014 arrest, including notes and anything else included in such files, shall be produced by August 3rd, 2018 (*id*.,pp.23-24 of 7-19-18 hearing transcript).

In response, the City produced a Declaration of Michael Spezio dated August 31, 2018 (**DE 198 filed under seal, Exhibit N**), who describes himself as a "lieutenant, currently assigned to the 90th Precinct Detective Squad." In that declaration, Lieut. Spezio states that

3

he "personally conduct[ed] a search of the records maintained in the regular course of business by the NYPD in   the 90th Precinct Detective Squad, specifically, the hard copies of detective files related to Complaint Nos. 2014-090-003184, 2014-090-03339, and 2014-090-03448" [Par. 2]. Lieut Spezio further states that "[a] search was also conducted under my supervision for the aforementioned files at an off-site storage facility utilized by the NYPD," but  "1 did not locate any hard copy detective files for Complaint Nos. 2014-090003184, 2014-090-03339, or 2014-090-03448." [Pars. 2 &3].

The fact that Mr. Spezio found the Detective Files at issue can no longer be found at the Detective Squad or at the storage facility does not explain how they mysteriously disappeared. Mr. Spezio states that "[t]he detective files are also maintained electronically in digital form," that "digital copies of the documents from the detective files related to Complaint Nos. 2014-090-003184, 2014-090-03339 and 2014-090¬03448 have been located and produced," and that "[t]here was only one case file associated with Complaint number 2014-09003448 and that case was prepared by members of the Domestic Violence Unit." Pars. 4, 5 & 6. Indeed, all of the above-mentioned  files, including the latter, were produced by Attorney Aimee Lulich on. Detective Wieber's initial deposition was held on February 20, 2018, about two years after it was noticed to take place. Any implication in the Spezio Affidavit  that the electronic files are the same as the hard copy Detective Files is simply inaccurate. *See* summary of Wieber's continued deposition testimony of May 8, 2019 and his Family Court trial testimony of January 13, 2013 above. See also pars. 17-26 of the Schwarz Aff. in Support of Motion for Rule 37 Sanctions. (**DE 196**).

In sum, only at an evidentiary hearing where appropriate witnesses and subpoenaed records can be called, will the Court be able to determine whether the defendants' spoliation of its Detective Squad case files and WIEBER's handwritten notes maintained in such files was sufficiently serious to warrant adverse jury instructions to be determined by the trial court at trial.

### III.     The Long history of Discovery Obstruction by the City Entitles Plaintiff to Unnecessary Legal Fees Incurred as a result

Shockingly, despite receiving police substantial records on December 15, 2015, Ms. Hoffman's Initial Disclosure provided only an arrest report for the May 26, 2014 and three police reports underlying the three sets of charges lodged against Plaintiff the following day. Although Attorney Aimee Lulich of the City Law Dept., substituting for Beth Hoffman in Dec. 2017 (**DE 62**),  produced documents previously withheld by the City about one year and nine months later, following a motion to compel (**DE**  ) by in Feb. 2018, she did not produce the continuously requested 90th Precinct Detective Squad's hard copy Detective Files and WIEBER's handwritten notes contained therein which were due under both Rule 26 and item 1 of Plaintiff's First Request for Production of Documents issued in January 2016 (**DE 196, Ex. A**).

The Court record is replete with plaintiff's motions to compel the production of numerous police records duly requested in early 2016 but never produced. *See* plaintiff's Memorandum of Law and Schwarz Affidavit in Support of Motion. The party seeking Rule 37 discovery sanctions discovery sanctions on the basis of spoliation must show by a

4

preponderance of the evidence: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, 880 F. 3d 620 (2d Cir. 2018) quoting *Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted). Based on the newly discovered evidence, when coupled with the evidence already presented, it becomes clear that in the course of defending against Plaintiff's claims that WIEBER engaged in rouge police work, the Defendants engaged in persistent discovery misconduct: failed to timely disclose the handwritten notes and hard copy Detective Files in his possession, restricted HERMAN's access to basic police records sought, and failed to impose an adequate litigation hold on critical documents at least after the suit was filed which omission allowed vital 90th Police precinct Detective Squad files to disappear or be destroyed. The City's "persistent refusal to comply with the discovery process provided ample grounds to suspect that the degree of its obstructive conduct would be commensurate with the value of the evidence it was hiding from Plaintiff and the court." See *Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, *id.*

The party seeking sanctions need not produce direct evidence of spoliation; rather, "circumstantial evidence may be accorded equal weight with direct evidence and standing alone may be sufficient." *CAT3, LLC v. Black Lineage, Inc.,* 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (citations omitted). If that party proves "negligent" spoliation, it "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by that party." *Tchatat,* 249 F. Supp. 3d at 706 (citation and quotation marks omitted). However, if that party proves "bad faith"—that is, intentional spoliation—"relevance may be presumed from the fact of the evidence's destruction." *Id.* (citation omitted); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 109 (2d Cir. 2002) ("Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.").

A district court's discretion to award a compensatory discovery sanction is not limited on the basis of the ultimate damages award. Instead, discovery sanctions are typically decided independently from the ultimate outcome of the case. A party that disregards its obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never have been incurred had the party complied with its obligations in the first instance. Here, Plaintiff's attorney was compelled to defend against frivolous motions and to make motions to compel compliance with routine discovery demands imposing monetary sanctions calculated to make Plaintiff's attorneys whole for the extra cost and efforts they reasonably undertook in response to the defendants' recalcitrance. See *Klipsch Group, Inc. v. ePRO E-Commerce Ltd.*, *id.*

Prior to filing this motion, the undersigned engaged in a meet and confer telephone conference with Attorney Bahrenburg and his supervisor, but both declined consent to the relief sought herein.  Accordingly, I respectfully request that the Court grant Plaintiff' motion in its entirety.

Respectfully,

_____
Simon Schwarz, Esq.